JANVIER, Judge.
In July, 1947, defendant, Barney Bryant, a painting contractor, and Morris Kunnes entered into a contract, under which Bryant undertook to paint the residence owned by Kunnes for $535.00 The work .was *873 done and m due course the contract price was paid by Kunnes to Bryant.'
Kunnes, finding that the result obtained was unsatisfactory, brought this suit against Bryant, alleging that “about two months after the work was completed by the said defendant said paint job failed and the cause of the failure of said paint job is unknown to your petitioner.” He further alleged that -it would cost “$589.00 to have the work done correctly, as the defendant agreed to do, and that petitioner is entitled to be paid the said sum of $589.00 in order to have the paint job performed on said premises as the defendant agreed to do.” He prayed for judgment against Bryant in that amount.
Bryant filed an exception of vagueness which was maintained with leave to amend, and accordingly, Kunnes filed an amended petition in which he alleged: “That the paint job performed under the contract failed in that nearly all of the paint cracked on the surface and became discolored within thirty (30) days after the work was completed, the cause of said cracking of the paint and discoloring being unknown to your petitioner.”
Bryant then answered, admitting that he and Kunnes had entered into the contract and that he had been paid the contract price. He averred that he had performed the work “in a first-class and workmanlike manner in that he applied the paint thereto in accordance with the manufacturer’s instructions ; that he used said paint directly from the containers thereof without in any wise adulterating or changing same; that the surface on which said paint was applied was properly prepared in a first-class and workmanlike manner in the only way that it could have been prepared in order to produce a first-class and workmanlike job.”
The trial judge found that the result obtained from the paint job was not satisfactory and, in written reasons for judgment, said: “ * * * about one-third of the paint work is presently peeling, and was peeling when plaintiff complained to defendant.”
He rendered judgment in favor of- plaintiff for $196.33, being one-third of the amount, which,- according to plaintiff, would be required to repaint the house.
The trial judge based his conclusion that the defendant was at fault on h'is finding that the record shows that the defendant- is an expert painter and should have known that, since the house had previously been painted with creosote and that it is practically impossible to obtain a satisfactory result over a surface which has been painted with creosote, he should have so advised Kunnes before undertaking the job.
From the judgment in favor of plaintiff, defendant has appealed, and plaintiff' has answered the appeal, praying that the amount of the judgment be increased to $589.00, the amount originally prayed for.
The record shows, and in fact all parties agree, that the creosote with which the house had been originally painted “bled”' through the paint which was applied by the' defendant, and that, as a result, the paint job is more or less unsatisfactory.
The record convinces us, as it did the trial judge, that it is a very difficult thing indeed for a painter to obtain a satisfactory result in painting over a surface which has previously been treated with creosote.
Garrity, a painter with eighteen years experience, said, “ * * * I have never known any paint that could cover creosote to make a successful job out of it.” He was asked: “Is there any product on the market guaranteed to seal in creosote?” And he answered: “None that I know of.”
Baily, who says that he has been in the paint business for thirty years, was asked: “ * * * have you ever been able to find any product that would successfully in all cases stop creosote from bleeding through paint that has been put on top?” And he answered: “It is my experience there is not anything that will stop it in every case, but I have stopped it a lot of times; the same material that will stop it in one case would not stop it in another case.”
Bourgeois, a painter with: thirty-eight years experience, was asked the proper method for sealing in stains, creosote, and aniline. He said that there were two or three different methods, and he did not *874 know- “whether you will have success or not”, and that he “positively would not guarantee work of that kind on a surface such; as creosote.”
We have no hesitation in saying, as did the trial judge, that for this reason, where an experienced painter is engaged to apply paint over such a surface, he should advise the owner of the grave danger' that a satisfactory result may not be obtained. We think, however, that that was done in this case. In fact, Kunnes, the owner, said that even before he talked to Bryant he had been told that to get a good paint result over creosote “is a pretty difficult job.” He added, however, that Bryant told him that there was a new material’ for sealing in creosote and that it “works perfect.” Bryant denies this and says that he suggested experimenting with a sealing in material known as Bull’s Eye.
The record shows that experiments were made on various parts of plaintiff’s house and that in these experiments this new material was used to determine whether it would completely seal in the creosote so that it would not then bleed through such paint as might be applied over it.
Plaintiff says that he knew that Bryant conducted these experiments, but he says that he did not check up afterwards to see the result. Bryant, on the other hand, says that when Kunnes asked him for an estimate, he said to him: “You have got a bad job. What do you want to do, put creosote on it again ?" And he says that Kunnes said that he did not want creosote, and that he then suggested the material called Bull’s Eye. He says that he had never tried it out on an outside job but that, on an inside job, a lot of times “where they have aniline stain, Bull’s Eye will kill it.”
Bryant says that he suggested that, if Kunnes was interested, he would make some experiments and see how ihe sealing material would work. He says that he made the experiments and that afterwards “we went back and * * * the paint was holding the creosote,” and he says that then Kunnes said to him: “All right, go ahead and paint the -hoúse,” and that he then said to Kunnes: “I cannot guarantee a job put. over creosot.e.”
The record leaves no doubt, in our minds that Kunnes knew th-at these experiments were being made, and that it was only after they were made that Bryant was told to go ahead with the job.
There is nothing in the record to contradict the statement of Bryant that, in doing the work, he applied the Bull’s Eye or sealing in material and then the paint in a workmanlike manner, and that the sealing in material was applied according to the instructions of the manufacturer.
It is true that an effort was made by plaintiff to show that possibly Bryant should have thinned the sealing in material before using it, but Bryant showed that the manufacturer’s instructions printed on the can which contained the material were that it should be used just as it comes from the can.
Our conclusion is that both parties knew well that it is very difficult to seal in creosote so that it will not bleed through paint when the latter is applied over it, and that in view of this knowledge, it was agreed that experiments would be made to determine the effectiveness of this sealing in material.
We agree thoroughly that in such a situation an expert painter should advise an owner as to the possibility that an unsatisfactory result will be obtained, but, as we have said, we feel certain that that. was done in this case, and that the owner therefore thoroughly understood that there was grave danger that the paint job might not be successful, and that he therefore waited to see the result of the experiments before he ordered that the work be proceeded with. Under such circumstances, the only obligation of the contractor was to use the same material as was used in the experiments and to do the work in the same way. We think that this was done and that, consequently, there is no liability in the contractor.
Accordingly the judgment appealed from is annulled, avoided and reversed, and plaintiff’s suit is dismissed at his cost.
Reversed.